(October 11, 1988)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY WILLIAMS, Also Known as BENNY ROBINSON, Appellant. —Judgment of the Supreme Court, New York County (Alfred Kleiman, J.), rendered on March 13, 1986, convicting defendant, after a jury trial, of attempted grand larceny in the second degree and criminal possession of burglar's tools and sentencing him, as a second felony offender, to concurrent, indeterminate terms of imprisonment of from 2 to 4 years for the burglary conviction and one year for the possession of burglar's tools, is affirmed.

The totality of the evidence was sufficient to permit the jury to conclude that the car defendant was attempting to steal was worth at least $1,500. The jury looked at photographs of the car, heard the testimony of Police Officer O'Leary, who examined the car, that it was in "fair or good" condition, and were informed that the "blue book" value of the car at the time of the theft was $2,375 and that the owner of the car, the New York Telephone Company, was able to put the car back into service after this incident. The evidence, therefore, was sufficient to sustain a conviction of attempted grand larceny in the second degree. Concur—Sullivan, Ross, Carro and Milonas, JJ.

Murphy, P. J., dissents in part in a memorandum as follows: Defendant has been convicted after a jury trial of attempted grand larceny in the second degree (Penal Law §§ 110.00, 155.35), and criminal possession of burglar's tools (Penal Law § 140.35). As to the attempted second degree grand larceny conviction, defendant claims, I think with merit, that there was insufficient evidence to establish the value of the car whose theft he is said to have attempted. I, therefore, find it necessary to part company with my colleagues in the

majority who would affirm the appealed judgment in its entirety.

To prove defendant's guilt of attempted grand larceny in the second degree, the People were required to adduce evidence establishing beyond a reasonable doubt that defendant had attempted the theft of property the value of which at the time and place of the crime exceeded $1,500. (See, Penal Law § 155.20 [1].) The property in question in this case was a 1981 Chevrolet Chevette. The trial testimony established that the Chevette was the property of the New York Telephone Company and had been stolen from the Telephone Company and repainted to obscure the Telephone Company markings at some unspecified time prior to July 6, 1985, when defendant allegedly attempted its theft. Although Earl Horsey, assistant manager of administration for the New York Telephone Company's Motor Vehicle Division, testified that company cars were inspected twice a year, the last inspection of the subject Chevette prior to July 6, 1985 had been in May 1984. Horsey also testified that company cars were retired every five years, at the end of their "life span", and sold at either public or private auction. Horsey stated that if company cars were sold on the open market they would be priced according to the value assigned in the National Automobile Dealers Association Book, commonly known as the "blue book". The "blue book" value of the subject Chevette on July 6, 1985 was $2,375. The only testimony concerning the Chevette's actual state at the time of the attempted theft was that given by Officer Larry O'Leary. He testified that the interior and exterior of the car were in "fair" condition. There was absolutely no evidence as to the mileage or operability of the car.

The People urge in essence that the "blue book" value assigned to 1981 Chevettes was prima facie proof that the Chevette in question was worth more than $1,500 at the time and place of the charged crime, and, therefore, that the attempted second degree grand larceny count was properly put before the jury. While it is true that "blue book" value admitted upon a proper foundation may constitute some evidence of value at the time and place of a crime, clearly it does not itself always constitute prima facie proof of the value of a particular vehicle. The specifics of a particular vehicle's history of possession, performance, use and maintenance may cause its actual value to diverge markedly from that assigned on the average to those of its make and year. An element of a crime may not be proven by averages; the proof is of necessity bound to the specifics of the case. Here, for example, there

were numerous reasons why the "blue book" value would not reliably reflect the actual value. As noted, the car had been previously stolen and had been operated during the apparently lengthy period it was not in the possession of its rightful owner by someone of presumptively dubious responsibility. There was no record of any maintenance having been performed on the car for over a year, and by Telephone Company standards, the car was nearing the end of its "life span". It may be noted that at the conclusion of its life span the car was not to be sold at the "blue book" price but to be auctioned at a price whose relation to the "blue book" value is a matter for sheer speculation. The only direct evidence of the car's condition at the time of the offense charged indicated that the car was merely in "fair" condition and there was no evidence whatsoever respecting the car's mileage or operability. These circumstances give striking illustration to the fallacy of vesting the "blue book" value with the probative weight the People would ascribe to it.

I would question whether the "blue book" value of any used car would itself be sufficient to sustain a criminal conviction, but in this case I think it more than evident that the "blue book" value was not adequate for the purpose to which it was put. Common sense instructs that notwithstanding the above-quoted book value, it is at best doubtful that the open market on July 6, 1985 would have commanded a price in excess of $1,500 for a 1981 Chevette company car nearing the end of its "life span" which for a substantial period had been in the hands of a thief and about which little was actually known except that it was in "fair" condition.

Although the word "totality" has rather expansive connotations, its use by the majority should not mask the fact that the total evidence of value before the jury was exceedingly thin and that the evidence contained in the appellate record is even thinner. Both the blue book and the photographs placed before the jury have since been misplaced and consequently are not part of the record on appeal. The totality is not augmented by the majority's observation that the Chevette was put back into service after the incident. This is, quite simply, irrelevant since the statute provides that the relevant assessment of value is that obtaining at the time and place of the crime (Penal Law § 155.20 [1]). That it was possible subsequently to return the vehicle to service at an unspecified cost reveals nothing of probative worth about the value of the vehicle when the crime occurred.

Accordingly, the judgment of the Supreme Court, New York

County (Kleiman, J.), rendered March 13, 1986, pursuant to which defendant Larry Williams was convicted of attempted grand larceny in the second degree and possession of burglar's tools, should be modified to the extent of reducing the conviction for attempted grand larceny in the second degree to one for attempted petit larceny *(see, People v Rivera,* 114 AD2d 305, 307) and the matter should be remanded for resentencing.